Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Jacqueline Mulville*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jacqueline Mulville,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Aetna Life Insurance Company, The Home Depot, U.S.A., Inc., The Home Depot, U.S.A., Inc. Long Term Disability Plan,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

   Now comes the Plaintiff Jacqueline Mulville (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

   1.   Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

1

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, The Home Depot, U.S.A., Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna group disability policy is known as Group Policy No.: GP-839226 (hereinafter referred to as the "LTD Policy"). The Company's purpose in sponsoring, administering and purchasing the Aetna LTD Policy was to provide long term disability insurance for its employees. Upon information and belief, the Aetna LTD Policy may have been included in and part of an employee benefit plan, which may have been named The Home Depot, U.S.A., Inc. Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Aetna functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plans may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5. Aetna operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit*, Aetna's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her

long term disability benefits. When Aetna denied Plaintiff's disability claim, it saved a significant sum of money.

6. The Company, Plan and Aetna conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled, from the relevant Home Depot Plan.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about November 11, 2013, due to serious medical conditions and was unable to work in her designated occupation as a Department Supervisor. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short term disability benefits, which was resolved by way of settlement. Plaintiff then filed a claim for long term disability benefits under the relevant policy which was administered by Aetna, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Aetna policy and definition of disability governing Plaintiff's long term disability claim is as follows:

Test of Disability
- You meet the test of disability on any day that/if you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

12. In support of her claim for long term disability benefits, Plaintiff submitted to Aetna medical records from her treating medical providers supporting her disability as defined by the relevant Aetna policy.

13. Upon information and belief, as part of its review of Plaintiff's claim for long term disability benefits, Aetna reviewed and only considered her medical records by way of a "paper review" of Plaintiff's short term disability claim from Elana Mendelssohn, Psy.D.

14. Upon information and belief, Plaintiff believes Dr. Mendelssohn may be a long time medical consultant for the disability insurance industry and Aetna. As a result, Plaintiff believes Dr. Mendelssohn may have an incentive to protect her own consulting relationship with the disability insurance industry and Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Aetna and which supported the denial of Plaintiff's claim.

15. In a letter dated August 22, 2014, Aetna informed Plaintiff it denied her claim for long term disability benefits.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 22, 2014 denial of her long term disability claim and in support of her appeal, Plaintiff submitted additional medical, vocational and lay-witness evidence demonstrating she met any definition of disability set forth in the relevant Aetna policy.

17. In support of her appeal, Plaintiff submitted to Aetna a narrative letter dated October 17, 2014 from her current treating board certified physician, who opined, "…I think it is reasonable to assume, given her age, medical conditions, and other factors, that [Plaintiff] will be unable to sustain gainful employment indefinitely."

18. Plaintiff submitted to Aetna an October 26, 2014 narrative letter authored by her current treating medical professional who opined, "Given [Plaintiff's] history and chronic nature of her condition it is reasonable to assume that she has been unable to work in any occupation."

19. Further supporting her claim, Plaintiff submitted an August 29, 2014 Medical Source Statement and Evaluation Report from a medical professional who concluded after an extensive evaluation of Plaintiff and her medical conditions, "Given [Plaintiff's] significant limitations in several functional areas…she would likely have both impaired functioning and symptom exacerbation in any occupation at the present time…"

20. Plaintiff also submitted to Aetna a vocational report from a certified vocational expert dated November 23, 2014, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "…it is unmistakable that [Plaintiff] will be unable to sustain any level of work activity for the foreseeable future."

21. In addition to the medical records and reports submitted to Aetna, Plaintiff submitted two sworn affidavits from herself and her husband, who confirmed Plaintiff is unable to work in any occupation and her medical condition has not improved in any way since her date of disability.

22. Upon information and belief, as part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical records only "paper review" of Plaintiff's claim from a physician consultant who Plaintiff believes may be an employee of Aetna.

Defendants did not disclose to Plaintiff, either during the administrative review of her claim or following its final denial, the name or the reports authored by the reviewing physician consultant.

23. Upon information and belief, Plaintiff believes the reviewing physician consultant may be an employee of Aetna. As a result, Plaintiff believes the reviewing physician consultant may have an incentive to protect his/her own consulting relationship with Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Aetna and which supported the denial of Plaintiff's claim.

24. Plaintiff questions the independence, impartiality and bias of Aetna's own employee to fully and fairly review her claim and she believes the consultant's opinions are adversarial because of his/her conflict of interest as an Aetna employee. Plaintiff believes Aetna's financial conflict of interest is a motivating factor as to why it referred Plaintiff's claim to its own employee for review.

25. In a letter dated January 6, 2015, in order to engage Aetna in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Aetna and the opportunity to provide these reviews to her treating physicians for their response, prior to Aetna rendering a final determination in her claim.

26. In a letter dated February 5, 2015, Aetna notified Plaintiff it had denied her claim for long term disability benefits under the policy. Aetna informed Plaintiff in its February 5, 2015 letter she had exhausted all administrative levels of appeal and could file a civil action lawsuit.

27. Prior to rendering its February 5, 2015 final denial, Aetna never shared with Plaintiff the report authored by the reviewing physician consultant and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the report and/or perfect her claim. Aetna's failure to provide Plaintiff with the opportunity to respond to the report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

28. In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in her best interests and other participants" which it failed to do.[1]

29. Aetna failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Aetna's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law, and a reason she did not receive a full and fair review.

30. Plaintiff believes Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; providing one sided

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

reviews of Plaintiff's claim favoring Aetna that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

31.     Plaintiff further believes the reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Aetna undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided a financial incentive for it to the deny the claim.

32.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Aetna and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and any ERISA procedural violation which may have impacted or influenced Aetna's decision to deny her claim.

33.     With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify *de novo* review.

34.     As a direct result of Aetna's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through

1   or from the Plan, another Home Depot Plan, and/or the Company as a result of being found
2   disabled.  Plaintiff believes other potential employee benefits may include but not be limited
3   to, health and other insurance related coverage or benefits, retirement benefits or a pension,
4   life insurance coverage and/or the waiver of the premium on a life insurance policy
5   providing coverage for her and her family/dependents.

6        35.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
7   prejudgment interest, reasonable attorney's fees and costs from Defendants.

8        36.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
9   §20-462, or at such other rate as is appropriate to compensate her for losses she incurred
10  as a result of Defendants' nonpayment of benefits.

11  WHEREFORE, Plaintiff prays for judgment as follows:

12  A.    For an Order requiring Defendants to pay Plaintiff her long term disability
13  benefits and any other employee benefits she may be entitled to as a result of being found
14  disabled pursuant to the Aetna policy from the date she was first denied these benefits
15  through the date of judgment and prejudgment interest thereon;

16  B.    For an Order directing Defendants to continue paying Plaintiff the
17  aforementioned benefits until such time as she meets the conditions for termination of
18  benefits;

19  C.    For attorney's fees and costs incurred as a result of prosecuting this suit
20  pursuant to 29 U.S.C. §1132(g); and

21  D.    For such other and further relief as the Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DATED this 9th day of March, 2015.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff